**NATURE'S BOUNTY, INC., Plaintiff,**

v.

**SUPERX DRUGS CORPORATION et al., Defendants.**

**No. 79 C 2351.**

United States District Court,
E. D. New York.

Feb. 7, 1980.

Blum, Kaplan, Friedman, Silberman & Beran, by James K. Silberman, New York City, for plaintiff.

Nims, Howes, Collison & Isner, by Oliver P. Howes, Jr., New York City, for defendants; Cushman, Darby & Cushman, by James L. Dooley, Washington, D. C., of counsel.

MEMORANDUM DECISION
AND ORDER

SIFTON, District Judge.

This proceeding is before the Court on motion filed by plaintiff, Nature's Bounty,

Inc., for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. Plaintiff seeks a preliminary injunction restraining defendant, SuperX Drugs Corporation,[1] from using the trademark "$KLB_6$" in connection with the sale of its food supplements and requiring it to withdraw all advertisements which utilize the designation "$KLB_6$." Plaintiff further requests that, during the pendency of this action, the Court impound all advertisements and printed material in defendant's possession which carry the mark "$KLB_6$." Since shipments to defendant by its immediate supplier of products labelled "$KLB_6$" ceased in November, 1979, and since defendant has voluntarily consented to the issuance of a preliminary injunction against any further purchases of products carrying this label, the Court is required to consider only whether defendant should additionally be enjoined from selling up to 17,460 bottles labelled "$KLB_6$" that are still in its inventory.

Plaintiff originally brought suit on September 14, 1979, for trademark infringement and false designation of origin under the Lanham Trademark Act, 15 U.S.C. §§ 1114(1) and 1125(a), for dilution pursuant to section 368–d of New York's General Business Law and for the common law tort of unfair competition. Jurisdiction was predicated upon 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1331 and 28 U.S.C. §§ 1338(a) and (b). Plaintiff seeks a permanent injunction and an accounting as well as punitive and treble damages. On January 11, 1980, plaintiff served upon defendant a motion for a preliminary injunction. The Court conducted a hearing on the motion on January 21, 1980, and its findings of fact are based on the testimony presented at that hearing and upon the affidavits submitted by the parties, to the extent not contested at the hearing.

## FINDINGS OF FACT

Plaintiff, Nature's Bounty, Inc., a manufacturer and distributor of food supplements and vitamins, is a New York corporation with its principal place of business in Bohemia, New York. Defendant, SuperX Drugs Corporation, which operates a chain of 500 drugstores throughout the United States, is a Michigan corporation located in Cincinnati, Ohio. In April 1974, plaintiff commenced using the mark "$KLB_6$" to identify one of its products, a food supplement containing, among other ingredients, kelp, lecithin and vitamin B6. It applied to the United States Patent Office for a certificate of registration, and on February 25, 1975, the Patent Office registered "$KLB_6$" as a trademark, Reg. No. 1,005,195. In December 1975, plaintiff adopted the mark "$KLB_6$ Complete" in connection with another of its vitamin products and became the registered owner of this trademark, Reg. No. 1,058,903. In March 1978, plaintiff introduced a third product, "$KLB_6$ Diet Mix," and was granted Reg. No. 1,115,113 for this trademark. Plaintiff has sold the "$KLB_6$" products throughout the United States continuously since 1974. Its sales have exceeded $2 million per year. Plaintiff has spent in excess of $500,000 advertising and promoting the sale of its food supplements and has built up substantial goodwill in the "$KLB_6$" line of products.

In August 1978, SuperX introduced onto the market its own food supplement tablets and capsules containing, among other ingredients, iodine derived from kelp, lecithin and vitamin B6. Defendant's bottles were labelled "$KLB_6$." The SuperX products were supplied to it by Bell Pharmacal Corp. of Greenville, South Carolina, a subsidiary, as is SuperX itself, of the Kroger Co. of Cincinnati, Ohio. An affidavit submitted by the Executive Vice President and Sales Manager of Nature's Bounty, which is not contradicted, indicates that the capsules marketed by plaintiff and defendant are identical, both having been procured from the same manufacturer.

The total sales by Bell to SuperX of the "$KLB_6$" product to date consist of 17,460

1. Plaintiff has named two defendants, SuperX Drugs Corporation and SuperX Drug Stores, but for purposes of this opinion, both defendants shall be referred to collectively inasmuch as the answer states that there is no legal entity identified as SuperX Drug Stores.

bottles at a cost of $32,787.47.[2] What remains unsold of these bottles is currently located in the 500 SuperX drugstores throughout the United States and in the SuperX warehouse in Melbourne, Florida.. The SuperX products retail at $3.29 for the basic supplement and $5.24 for the extra-strength supplement. The usual price for the basic Nature's Bounty supplement is $5.95. SuperX continues to purchase these products from Bell, but they are now packaged under a new label which does not contain the acronym "KLB$_6$," but rather spells out the names of the ingredients.

## CONCLUSIONS OF LAW

The requirements for the issuance of a preliminary injunction are well established in this Circuit. In *Sonesta International Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973), the Court of Appeals stated:

> "The settled rule is that a preliminary injunction should issue only upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting preliminary relief."

*Accord, Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979); *Triebwasser & Katz v. American Telephone & Tele-graph*, 535 F.2d 1356, 1359 (2d Cir. 1976).

The Court concludes that plaintiff is entitled to preliminary injunctive relief under the second standard. First, plaintiff has raised "sufficiently serious questions going to the merits" with respect to its claims of trademark infringement and false designation of origin under the Lanham Act to make them a fair ground for litigation. Trademark infringement under the Act occurs where the nonconsensual use of a colorable imitation of a valid mark is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). The case

law in this Circuit identifies four different categories of marks: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful. *See Abercrombie & Fitch Co. v. Hunting World*, 537 F.2d 4, 9 (2d Cir. 1976). A generic term is the ordinary descriptive name of the substance, such that a monopoly of the term "would confer a monopoly not only of the mark but of the product by rendering a competitor unable effectively to name what it was endeavoring to sell." *Id.* at 10. A descriptive term "conveys the characteristics, functions, qualities or ingredients of a product to one who has never seen it and does not know what it is." *Stix Products, Inc. v. United Merchants & Mfrs., Inc.*, 295 F.Supp. 479, 487 (S.D.N.Y.1968). The test of suggestiveness is whether the term "requires imagination, thought and perception to reach a conclusion as to the nature of the goods." *Id.* at 488. A mark which is generic or descriptive is denied the protection of the Act, whereas a mark that is suggestive or fanciful warrants protection against infringement. *Abercrombie & Fitch Co. v. Hunting World, supra* at 9. Defendant's primary defense is that "KLB$_6$" is merely a generic term and, therefore, not entitled to protection under the statute. Defendant further explains that it adopted the mark because other competitors, including Rexall and Nature-Made Nutritional Products, used the same "KLB$_6$" designation for their products.

However, any registration of a mark is prima facie evidence of "the validity of the registration" and of the "registrant's exclusive right to use the registered mark in commerce in connection with the goods or services" specified in the registration. 15 U.S.C. §§ 1057(b) and 1115(b). This Circuit has often acknowledged the "strong presumption of validity" created by registration. *Miss Universe, Inc. v. Patricelli*, 408 F.2d 506, 509 (2d Cir. 1969). *See Abercombie, supra* at 14. Thus, plaintiff is entitled *to* a strong, if rebuttable, presumption that its mark is suggestive rather than

---

**2.** SuperX purchased 10,188 bottles of the basic supplement at $1.75 per bottle, and 7,272 bottles of the extra-strength supplement at $2.38 per bottle.

generic or descriptive. Even apart from the presumption, however, it would not be unreasonable to conclude that the trademark "KLB$_6$" does not fit the criteria for "generic" and "descriptive" terms stated above, but rather, requires "imagination, thought and perception" to reach a conclusion as to the nature of the goods. In the absence of evidence as to actual customer reactions, the acronym "KLB$_6$" appears more suggestive of the nature of the goods than descriptive of the three nutritional ingredients contained therein.[3] The conclusion that KLB$_6$ is suggestive is strengthened by the fact that none of the products introduced as exhibits list the ingredients in the order suggested by the designation "KLB$_6$." Indeed, defendant's products list iodine derived from kelp, rather than kelp itself, as a component of the product. In any event, defendant has not provided credible evidence sufficient to rebut the presumption of validity.[4] The use of an acronym referring to an admixture of not wholly familiar ingredients distinguishes this trademark from that used in connection with another Nature's Bounty product, "B–100," a mark held by Judge Neaher to be merely descriptive of 100 milligrams of vitamin B and, therefore, not entitled to protection against infringement. *Nature's Bounty, Inc. v. Basic Organics*, 432 F.Supp. 546 (E.D.N.Y.1977). This Court need not, in any event, finally decide this issue at this time; it merely concludes that the entitlement of the trademark "KLB$_6$" to statutory protection is a "sufficiently serious question" to be a "fair ground for litigation."[5]

■ Assuming that the trademark is entitled to the protection of the statute, a cause of action for infringement, as previously noted, requires that the defendant use in commerce a colorable imitation of the trademark which is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Plaintiff has also raised serious questions concerning the likelihood of confusion between the two products. The factors to be taken into account in determining the likelihood of confusion include the strength of the first user's mark, the degree of similarity between the marks, the similarity between the products, the infringer's intent in adopting the marks, actual confusion, and the degree of care likely to be exercised by consumers. *See, e. g., Grotrian, Helfferich, Schultz, etc. v. Steinway & Sons*, 523 F.2d 1331 (2d Cir. 1975); *B & L Associates v. H. Daroff & Sons, Inc.*, 421 F.2d 352 (2d Cir.), *cert. denied*, 398 U.S. 952, 90 S.Ct. 1873, 26 L.Ed.2d 292 (1970); *Miss Universe, supra* at 509. Given the virtual identity of the marks and the equivalence of the products, the likelihood of confusion is substantial enough to meet the test for issuance of a preliminary injunction. Nor, indeed, has defendant disputed the possibility that consumers may confuse the two products.

■ Similarly, plaintiff has raised serious questions with respect to its related claim under Section 43(a) of the Lanham Act. This section, which created a new federal statutory tort, was intended to provide broad remedial protection against deceptive and misleading advertising, whether or not a trademark has been registered. *CBS Inc. v. Springboard International Records*, 429 F.Supp. 563, 566–67 (S.D.N.Y. 1976). A cause of action arises under this section when a mark used in interstate commerce "is likely to cause confusion, or to

---

3. The test is what the consumer who purchases the product, not the industry, understands the term to mean. *Stix Products, supra* at 490; *Bayer Co. v. United Drug Co.*, 272 F. 505, 509 (S.D.N.Y.1921).

4. Defendant has not demonstrated that acronyms are commonly used as generic terms for nutritional compounds; indeed, one of its own employees, a former Quality Assurance Manager, testified that she could think of no other example of a product label that employed an acronym. The fact that competitors also adopt the mark "KLB6" does not necessarily suggest that the term is generic, but may only indicate that Nature's Bounty's success with its "KLB6" line tempted others to infringe its trademark.

5. Though not raised by the parties here, even if the mark is merely "descriptive," plaintiff may still prevail at the time of trial if it demonstrates that "KLB6" has acquired a secondary meaning and become distinctive. 15 U.S.C. § 1052(f).

deceive purchasers into believing that the source of origin of the goods is another." *National Lampoon, Inc. v. American Broadcasting Co., Inc.*, 376 F.Supp. 733, 746 (S.D. N.Y.), *aff'd* 497 F.2d 1343 (2d Cir. 1974). For purposes of a preliminary injunction it is not necessary to show actual deception of the public, but merely the likelihood of deception or confusion. *CBS Inc., supra* at 568. Because of the similarity in this instance of the substantive requirements of the two causes of action, the foregoing analysis with respect to trademark infringement suggests that plaintiff also has a serious claim under this section of the statute.[6]

■ Turning to the question of the balance of hardships, the Court concludes that the balance tips decidedly towards plaintiff, the party requesting the preliminary relief. The availability for sale at a lower price of over 17,000 bottles of the allegedly infringing product may severely damage plaintiff in terms not only of potential profits, but also in terms of goodwill. As the court stated in *George Washington Mint, Inc. v. Washington Mint, Inc.*, 349 F.Supp. 255, 263 (S.D.N.Y.1972):

> "It is not necessary to anticipate an actual diversion of buyers but only confusion. If time is given to the defendant to move into the same competitive market there would inevitably begin an attrition of the aura of exclusively appropriated to the plaintiff's goodwill. It would tend to take the plaintiff's reputation out of its own control."

Although plaintiff is not harmed in this case by the sale of an inferior product, federal trademark law protects a registrant not only against injury to business reputation, but also against "dilution of the distinctive quality of his mark." *E. I. duPont de Nemours & Co. v. Yoshida International, Inc.*, 393 F.Supp. 502, 522 (E.D.N.Y.1975).

Defendant contends that the SuperX product is sold only in its own stores and is therefore not directly competitive with plaintiff's product, which defendant claims is sold in specialty stores such as health food stores. However, the clientele of health food stores obviously also patronize drugstores where they may discover what they believe to be the original "KLB$_6$" available at a discount. Moreover, although no specific evidence was introduced by either party at the hearing as to where the Nature's Bounty products are geographically distributed, plaintiff stated in affidavits which were not contested that it sells its products throughout the United States. The 500 SuperX drugstores, by defendant's admission, are also located throughout the United States. Hence, it is reasonable to conclude that the products are in direct competition.

The hardships defendant points to are purely economic—the costs involved in shipping the "KLB$_6$" bottles back to the warehouse for repackaging and the costs of relabelling. It is worth noting in this connection that new SuperX labels have already been manufactured. The potential losses to the defendant are easily calculable and can be secured against by a bond. The damages to plaintiff's goodwill, on the other hand, are intangible and difficult to assess in monetary terms. This Circuit recognizes that the consequences of trademark infringement and false representations are "by their nature not fully compensable by money damages." *National Lampoon, supra* at 750.[7] These considerations lead this Court to conclude that it is appropriate to award plaintiff injunctive relief on condition that it post a bond sufficient to cover the anticipated damages to the defendant if the injunction must later be vacated.

■ Defendant has raised one further issue, the fact that plaintiff seeks this in-

---

**6.** Owing to the Court's disposition of the federal causes of action, it is unnecessary at this time to consider whether plaintiff has also raised serious questions with respect to its pendent state claims.

**7.** The fact that some of the bottles have probably already been sold, leading to difficulties in the calculation of plaintiff's damages, is no argument for maximizing this type of incalculable damage by allowing defendant to sell the remaining supply.

junction four months after the commencement of the action. The Court finds that under the circumstances of this case, this delay is not a bar to injunctive relief. Plaintiff has attempted, since the initiation of the litigation, to resolve this dispute through negotiations between the parties. It appears that these discussions were successful in obtaining defendant's agreement to cease its purchase of the products under the "KLB$_6$" label. These negotiations have only recently reached an impasse. Plaintiff has, therefore, not inexcusably delayed in presenting to the Court its application for a preliminary injunction at this time.

Defendant is, therefore, enjoined from utilizing the trademark "KLB$_6$" in labelling or advertising its food supplements and is specifically enjoined from selling whatever bottles labelled "KLB$_6$" remain in SuperX drugstores and warehouse upon the filing by plaintiff of a supersedeas bond in the amount of $15,000 pursuant to an order to be settled on two days' notice.

SO ORDERED.