**ORIGINAL APPALACHIAN ARTWORKS, INC.,**
Plaintiff,

v.

**GRANADA ELECTRONICS, INC., Defendant.**

No. 85 Civ. 9064 (WCC).

United States District Court,
S.D. New York.

July 23, 1986.

Wyatt, Gerber, Shoup, Scobey & Badie, New York City, for plaintiff; Gerard F. Dunne, Bruce N. Proctor, Eliot S. Gerber, New York City, Stanley F. Birch, Jr., Vaughn, Roach, Davis, Birch & Murphy, William H. Needle, Atlanta, Ga., of counsel.

Haas, Greenstein, Hauser, Sims, Cohen & Gerstein, P.C., New York City, for defendant; Noel W. Hauser, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

This action raises again the always troublesome issue whether the owner of a registered U.S. trademark can prevent the sale in this country of imported "grey goods" bearing the trademark which are manufactured abroad under license from the owner. The Court concludes that, at least in the particular circumstances of this case, where the foreign license is territorially restricted and the foreign-made goods are materially different from the U.S.-made goods, the question must be answered affirmatively.

The action was brought by Original Appalachian Artworks, Inc. ("OAA"), the original source and licensor of the well-known CABBAGE PATCH KIDS ("CPK") dolls, against Granada Electronics, Inc. ("Granada") a United States importer and distributor of CPK dolls made in Spain by Jesmar, S.A. ("Jesmar") under license from OAA. The action originally charged not only infringement of OAA's U.S.-registered trademark CABBAGE PATCH KIDS but also infringement of OAA's U.S.-registered copyright on the design of the dolls. However, at the trial, the copyright claim was voluntarily dismissed with prejudice.

Following a two-day non-jury trial on the trademark claim, the Court makes the following findings of fact and conclusions of law, pursuant to Rule 52(a), Fed.R.Civ.P.

*Findings of Fact*

OAA is a corporation of the State of Georgia with its principal place of business in Cleveland, Georgia. Granada is a corporation of the State of New York having its principal place of business in Brooklyn. OAA is engaged in the manufacture and sale of soft-sculpture dolls under the trademark CABBAGE PATCH KIDS. OAA is also engaged in licensing, the manufacture and sale of CPK dolls and related items by others under its trademark and copyright.

OAA's own soft-sculpture CPK dolls are completely hand-sewn in Cleveland, Georgia by OAA and are sold at retail for a price in excess of $100. OAA markets these CPK dolls through what it calls "adoption centers," which are primarily specialty stores and finer department stores. OAA has approximately 450 of these outlets around the United States. In addition, OAA has two retail stores of its own where it offers for "adoption," or sale, its CPK dolls. With each "adoption," or

purchase, of a CPK doll, the purchaser receives a "birth certificate" and "adoption papers" to be filled out by or for the "parent," or owner, of the doll, who takes an "oath of adoption." A copy of the executed adoption papers is returned to OAA and the relevant information thereon is entered in OAA's computer. On the first anniversary of the "adoption," the "adopting parent" receives a "birthday card" from OAA. This "adoption" process is an important element of the mystique of the CPK dolls, which has substantially contributed to their enormous popularity and commercial success.

On March 1, 1982, OAA entered into an agreement with Schlaifer Nance and Company, Inc. ("SNC") whereby SNC was engaged to act as OAA's exclusive agent to license the CPK rights to others. On August 8, 1982, OAA, through SNC, granted a license to Coleco Industries, Inc. ("Coleco") of Hartford, Connecticut to manufacture, promote and distribute copies of plaintiff's CPK dolls within the United States. CPK dolls marketed by Coleco are a smaller version of OAA's soft-sculpture CPK dolls. However, instead of being entirely hand-sewn from fabric like the OAA dolls, those of Coleco are mass-produced with vinyl heads and are packaged in boxes which prominently feature the CABBAGE PATCH KIDS trademark, and set forth the CPK "legend," [1] while the original dolls of OAA are unpackaged. The Coleco CPK dolls normally retail at a price of $35 to $45.

The Coleco CPK dolls, like those of OAA, are accompanied by birth certificates and adoption papers which prominently display the CABBAGE PATCH KIDS trademark. These dolls are also accompanied by English-language instructions directing the purchaser to return the completed adoption papers in a pre-addressed envelope to a processing center in the United States. These instructions also describe the proce-

dure for "legally" changing the name of the doll if desired. To process the adoption papers, Coleco engages the services of "fulfillment houses" which are compensated on a per-piece basis. Upon receipt of the adoption papers, the fulfillment house sends the "adopting parent" a suitable-for-framing birth certificate as well as a birthday card on the first "birthday" of the doll.

Coleco was initially given worldwide rights for manufacture and distribution of CPK dolls and related articles, but subsequently relinquished its worldwide rights. Thereafter, OAA, through its exclusive licensing agent SNC, licensed other companies outside the United States to manufacture and sell, in specified areas outside the United States, the vinyl-headed smaller version of the CPK doll similar to that sold by Coleco. On April 13, 1984, SNC licensed Jesmar to manufacture and distribute this version of the CPK doll in Spain, the Canary Islands, Andorra and Ceuta Melilla. Like other foreign licensees, Jesmar agreed not to make, sell or authorize any sale of the licensed products outside its licensed territory. Jesmar further agreed that it would sell or distribute licensed products only with an express agreement that the purchaser will not use or resell the licensed products outside the licensed territory.

The CPK dolls made by Jesmar come in boxes on which the "legend" of the CPK dolls, and most of the other wording, is printed entirely in the Spanish language. However, the CABBAGE PATCH KIDS trademark is prominently displayed in English on all panels of the box except the bottom. Also printed in English are the words "The World of" which immediately precede the trademark CABBAGE PATCH KIDS on the rear panel of the box, and the name Original Appalachian Artworks, Inc. and its address, Cleveland, Georgia, U.S.A. which appear in small print in the copyright notice.

---

1. "The Legend of the Cabbage Patch Kids" is that many years ago a young boy named Xavier happened upon an enchanted cabbage patch where he found very special little people who called themselves Cabbage Patch Kids. To help fulfill the Cabbage Patch Kids' dream of having families with whom to share their love, Xavier set about building a special place known as Babyland General, where the Cabbage Patch Kids remain until each is chosen for adoption.

The Jesmar dolls are sold with birth certificates and adoption papers which are completely in the Spanish language, as are the instructions for completing the "adoption" and obtaining a change of name. The mailing address to which the adoption papers are directed to be sent is located in Spain.

OAA received Trademark Registration No. 1,298,970 from the United States Patent and Trademark Office on October 2, 1984 for the trademark CABBAGE PATCH KIDS for dolls. Thereafter, OAA caused Trademark Registration No. 1,298,970 for CABBAGE PATCH KIDS for dolls to be recorded with the United States Customs Service. As directed by the regulations of the United States Customs Service, 19 C.F.R. §§ 133.2(c), 133.21–.24 (1985), OAA's application for recordation with Customs included, *inter alia,* "[t]he name and principal business address of each foreign person or business entity authorized or licensed to use the trademark and a statement as to the use authorized." Accordingly, Jesmar was listed on the application for Customs recordation by OAA. Consequently, the Customs Service sent a letter to its officials authorizing CPK dolls made by Jesmar to pass through Customs, as the Customs Service regulations do, not provide for halting the importation of goods which were made abroad under license granted by the recording party.

OAA has, or has had, at least 120 licensees for various CPK products, with Coleco's vinyl-headed version of the CPK doll being the centerpiece of this licensing program. Coleco has enjoyed spectacular commercial success with its version of the CPK doll, with sales of over 37 million of such dolls. Coleco spent $1,800,000 in advertising its CPK dolls in 1983, approximately $5,000,000 in 1985 and approximately $2,900,000 in the first two quarters of 1986, for a total of approximately $9,700,000 on CPK dolls alone. Coleco's advertising for the entire CPK product line through 1985 totals $38,800,000 and Coleco plans to spend approximately $20,000,000 more in advertising for the line in 1986.

Coleco has produced a number of television commercials advertising its CPK dolls, which highlight the "adoption" process, and these commercials have been extensively broadcast throughout the United States. By virtue of Coleco's large advertising expenditures for its version of the CPK doll and related products and its substantial sales, the CABBAGE PATCH KIDS trademark has become famous and associated with Coleco as the source for its version of the CPK dolls in the United States.

In December 1984 OAA and Coleco became aware that the vinyl-headed CPK dolls manufactured by Jesmar and similar CPK dolls of other foreign licensees were being sold in the United States. OAA and Coleco each received numerous letters from United States purchasers of these foreign CPK dolls, including those of Jesmar, expressing disappointment that they had received birth certificates and adoption papers which were not in English and which they could not understand.

In addition, beginning in December 1984, Coleco received an average of 12 to 15 telephone calls a day complaining about CPK dolls with foreign language birth certificates and adoption papers. Approximately 40% of these calls concerned Jesmar's Spanish-made CPK dolls.

Purchasers have come to expect that dolls sold in the United States bearing the trademark CABBAGE PATCH KIDS will include birth certificates and adoption papers in the English language which can be mailed to an addressee in the United States, who will process the adoption papers and return them to the "parent." Jesmar dolls imported into and sold in the United States under the trademark CABBAGE PATCH KIDS by Granada will likely cause confusion, mistake and deception on the part of the purchasing public because these dolls with Spanish language adoption papers and birth certificates are not the product those purchasers expect to receive when they purchase a CPK doll in the United States. Consumers are therefore being misled and disappointed and fre-

quently hold OAA and/or Coleco responsible therefor. The sale of these nonconforming CPK dolls in the United States therefore has damaged and threatens to continue to damage the reputation of OAA and Coleco as sources of high quality CPK products.

To combat the problem of the sale of non-conforming foreign CPK dolls in the United States, OAA's exclusive licensing agent, SNC, sent both a letter and a telex message to each of its foreign licensees for the vinyl-headed CABBAGE PATCH KIDS dolls, including Jesmar, reminding them that said licensees were contractually obligated not to sell foreign-made CPK dolls out of their licensed territories. Further, OAA filed at least 24 lawsuits in the United States against distributors and importers of the foreign-made CPK dolls.

The CPK dolls manufactured in Spain by OAA's licensee, Jesmar, were imported into the United States by Granada, who resold the dolls through jobbers and retail chains. These dolls bore the trademark CABBAGE PATCH KIDS prominently printed in English on the package.

Granada had no communications with agents of OAA, SNC, or with Coleco regarding its importation of foreign-made CPK dolls into the United States and thus had no authorization from OAA, Coleco or SNC for such importation or sale.

■ Granada introduced evidence intended to establish that the retail price of foreign-made CPK dolls in the United States was substantially lower than that of the Coleco CPK dolls. Granada also introduced evidence that Granada had unsuccessfully attempted to purchase CPK dolls directly from Coleco. OAA introduced opposing evidence on both points. However, the Court need not resolve the conflict because trademark infringement is not excused by either the high price or the scarcity of the genuine product.

### Conclusions of Law

■ OAA's registration of the trademark CABBAGE PATCH KIDS for dolls is prima facie evidence of the validity of that registration and of OAA's exclusive right to use the CABBAGE PATCH KIDS trademark. *Nature's Bounty, Inc. v. SuperX Drugs Corp.*, 490 F.Supp. 50, 53–54 (E.D. N.Y.1980). Granada has not challenged the validity of the registration nor OAA's rights in the trademark.

■ The Lanham Trademark Act of 1946, 15 U.S.C. § 1114(1)(a), prohibits the unauthorized sale of goods bearing a registered trademark where there is a likelihood of confusion, mistake or deception of purchasers. *Syntex Laboratories, Inc. v. Norwich Pharmacal Co.*, 437 F.2d 566, 568 (2d Cir.1971).

The report of the Senate Committee on Patents respecting the bill which became the Lanham Act described its objective as follows:

> The purpose underlying any trademark statute is twofold. One is to protect the public so it may be confident that, in purchasing a product bearing a particular trade-mark which it favorably knows, it will get the product which it asks for and wants to get. Secondly, where the owner of a trademark has spent energy, time, and money in presenting to the public the product, he is protected in his investment.

S.Rep. No. 1333, 79th Cong., 2d Sess. 1, *reprinted in* 1946 U.S.Code Cong.Serv. 1274, 1274. Thus, the purchasing public is an unnamed party in every action for trademark infringement.

The public to be protected consists not of sophisticated buyers who make careful decisions but hypothetical "average" purchasers.

> The law is not made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions.

*Florence Mfg. Co. v. J.C. Dowd & Co.*, 178 F. 73, 75 (2d Cir.1910); *see also Stork Restaurant v. Sahati*, 166 F.2d 348, 359 (9th Cir.1948).

■ The Jesmar CPK dolls with foreign language birth certificates, adoption papers and instructions are materially different from the Coleco CPK dolls with English language papers. The sale in the United States of the Jesmar dolls with the CABBAGE PATCH KIDS trademark prominently displayed in English on the package causes the public to confuse or mistake the Jesmar dolls for the Coleco dolls with English-language papers which they expect to be on sale in this country.

OAA has amply demonstrated that purchasers are confused as to the source of the Spanish-made CPK dolls and that the sale of such dolls in the United States with Spanish language birth certificates and adoption papers has injured the reputation and good will of OAA and its licensee Coleco. Granada's sale of the Jesmar CPK dolls in the United States is therefore actionable under 15 U.S.C. § 1114(1)(a). *Bell & Howell: Mamiya Co. v. Masel Supply Co.,* 719 F.2d 42 (2d Cir.1983).

While OAA's listing of Jesmar on its application for recordation of the trademark CABBAGE PATCH KIDS with the United States Customs Service pursuant to 19 C.F.R. §§ 133.2(c), 133.21–.24 (1985), permits the trademarked dolls made by Jesmar to pass through customs, it does not extinguish OAA's right to protection against unauthorized sale of the imported dolls in the United States. *Vivitar Corp. v. United States,* 761 F.2d 1552, 1570 (Fed. Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986); *Olympus Corp. v. United States,* 792 F.2d 315, 320 (2d Cir.1986).

■ A trademark owner may not ordinarily complain about goods sold in the United States under his mark when the trademark was applied with authorization that the goods be sold in the United States, whether or not the goods are different from or inferior to those made in this country. *Alfred Dunhill, Ltd. v. Interstate Cigar Co., Inc.,* 499 F.2d 232 (2d Cir.1974); *Sasson Jeans, Inc. v. Sasson Jeans, L.A., Inc.,* 632 F.Supp. 1525, 1528–29 (S.D.N.Y. 1986); *El Greco Leather Prods. Co., Inc. v.*

*Shoe World Inc.,* 599 F.Supp. 1380, 1394 (E.D.N.Y.1984). However, in this case the use of the trademark CABBAGE PATCH KIDS on foreign-made goods was authorized only for goods to be sold in specified areas outside of the United States, and with the licensee's express commitment that they will not be sold outside the specified areas. In these circumstances, the Court concludes that OAA has not contractually relinquished its right to protection against the sale of the non-conforming foreign-made products in this country and that the public's interest requires such protection.

■ Granada's argument that OAA can readily protect the public merely by supplying English-language papers to the purchasers of the Jesmar dolls is not persuasive. A U.S. trademark owner is under no legal or even moral obligation to supply what an infringer has misled its customers to expect.

Granada will be permanently enjoined from further importation of the Jesmar dolls and other CPK dolls made abroad under similar territorially restricted licenses. Counsel will be notified in due course of a conference to set a trial on the issue of damages for past infringement.

SO ORDERED.