FIRMA MELODIYA and BMG Music, Plaintiffs,

v.

ZYX MUSIC GmbH, ZYX Music Distribution, Inc., PG Records Pty. Ltd., Melodiya Australia Pty. Ltd., Unidata Solutions Pty. Ltd., HDA Entertainment Group Pty. and Philip Allwood, Defendants.

No. 94 Civ. 6798.

United States District Court, S.D. New York.

March 16, 1995.

As Amended April 12, 1995.

Parcher & Hayes, P.C. by Steven M. Hayes, Orin Snyder, New York City, for plaintiffs.

Robert S. Meloni, New York City, for defendants ZYX Music GmbH and ZYX Music Distribution Ltd.

Barry Fredericks, Englewood Cliffs, NJ, for defendants PG Records Pty. Ltd., Melodiya Australia Pty. Ltd., Unidata Solution Pty. Ltd., HDA Entertainment Group Ptd. Ltd., and Philip Allwood.

## AMENDED OPINION AND ORDER

CHIN, District Judge.

Plaintiffs Firma Melodiya ("Melodiya") and BMG Music ("BMG") commenced this action on September 19, 1994, alleging that defendants' unauthorized manufacture, distribution and sale of Melodiya's recordings in the United States constituted federal and state copyright and trademark infringement, unfair competition, trademark dilution, false advertising and deceptive acts and practices under federal and New York state law. Subsequently, plaintiffs moved for a preliminary injunction against ZYX Music GmbH and ZYX Music Distribution Ltd. (collectively, "ZYX" or the "ZYX Defendants"), PG Records Pty. Ltd., Melodiya Australia Pty. Ltd., Unidata Solutions Pty. Ltd., HDA Entertainment Group Ptd. and Philip Allwood (collectively, the "Allwood Defendants"). A hearing was held on the preliminary injunction motion at which all parties presented witnesses and exhibits. Memoranda of law and numerous affidavits were filed prior to the hearing, and the parties were given the opportunity to submit post-hearing briefs. For the reasons stated below, plaintiffs' motion is granted. My findings of fact and conclusions of law follow.

The ZYX Defendants move to dismiss the complaint against them based on the doctrine of *forum non conveniens.* That motion is denied.

### Background

This is an intricate case of international intrigue, involving players from the United States, Germany, Australia and the former Soviet Union as well as allegations of forgery, fraud and deception. The ZYX Defendants admit marketing compact discs containing copies of plaintiffs' master recordings and bearing plaintiffs' trademarks in the United States and claim that they have the right to do so under a license purchased from the Allwood Defendants. In turn, the Allwood Defendants claim the right to plaintiffs' music and trademarks under an agreement purportedly signed in 1988. Plaintiffs, however, claim that the agreement is a forgery and contend that the Allwood Defendants had no right to give the ZYX Defendants any license to distribute their recordings in the United States.

### The Parties

Melodiya, a state enterprise organized and existing under legislation enacted by the Russian Federation, records musical sound recordings and manufactures and distributes phonorecords containing those recordings. Melodiya's extensive music catalogue includes classical, jazz, rock, religious and ethnic music; the classical music catalogue contains compositions by Tchaikovsky, Rachmaninov, Stravinsky and Prokofiev, as well as renditions by the USSR Symphony Orchestra and the Leningrad Philharmonic Orchestra and performances by Olega Kagan and Mstislav Rostropovich.[1] Melodiya has been in existence since 1964 and since September 1993 has been formally known as Firma Melodiya.

Before April 1, 1989, Melodiya was represented by Mezhdunarodnaya Kniga ("MezhKniga"), an agency of the USSR Ministry of Foreign Trade. MezhKniga entered into license agreements with companies outside the Soviet Union for the distribution and sale of Melodiya's recordings. In 1989, the Soviet government authorized Melodiya to represent itself exclusively as of April 1, 1989 and

---

1. The recordings at issue in this case are all classical music compositions.

gave it exclusive rights to license the distribution of its recordings.

For many years, Melodiya's recordings have been sold worldwide under its trademarks MELODIYA, MELODIYA in Cyrillic letters, and a stylized "M" set on concentric circles. In May and September 1992, Melodiya registered the Cyrillic MELODIYA and the "M" logo as its trademarks with the United States Patent and Trademark Office for "prerecorded audio cassettes and records featuring music." (Complaint ¶ 14).

BMG, a New York partnership, manufactures, distributes and sells phonorecords. By agreement dated January 1, 1994, Melodiya granted BMG a license to distribute Melodiya recordings and exploit the Melodiya trademarks in the United States until the year 2012 (the "BMG License"). Plaintiffs allege that this license is exclusive and that any rights previously given by Melodiya or MezhKniga to distribute Melodiya recordings in the United States either expired or terminated before the effective date of the BMG License.

ZYX Music GmbH ("ZYX GmbH") is a German corporation that also manufactures, distributes and sells phonorecords. ZYX Music Distribution Ltd. is a New York corporation that distributes phonorecords for ZYX GmbH. The ZYX Defendants are relative newcomers to the classical music industry in the United States and their catalogue is significantly smaller than Melodiya's. HDA Entertainment Group Pty. Ltd., an Australian corporation, manufactures, distributes and sells music records. Philip Allwood is an Australian citizen and the director of HDA.[2]

### The Alleged Infringement

In May 1987, MezhKniga entered an agreement granting a license to the Allwood Defendants to distribute some 200 of Melodiya's recordings (the "Melodiya Recordings")

in Australia and New Zealand for three years (the "1987 Agreement"). This agreement was signed by Nikolai Minaev, an Assistant Trade Representative for the USSR in Australia from 1985 through 1988, and Boris Fomichev, who was stationed in the Soviet Union's consulate in Australia. The Agreement was amended in 1988 to include Hong Kong and to extend the license to April 1993. Philip Allwood also attempted in 1988 to get an extension of the Agreement to include distribution rights in the United States, but was rejected.[3] By letter dated December 28, 1989, MezhKniga advised Allwood that the 1987 Agreement would expire in May 1990 due to the marked changes occurring in the Soviet Union, and that Melodiya would have exclusive rights to the recordings at issue.[4]

In June 1994, ZYX began shipping compact discs containing the Melodiya Recordings into New York. The disc labels state "Made in Germany" and bear the ZYX name and logo, as well as the word MELODIYA in English, Melodiya's registered trademark M and design logo, and the claim "Made under license from Melodiya Australia C. 1987." Plaintiffs learned of the distribution in June 1994 and wrote to the ZYX Defendants' counsel on June 29, 1994, demanding that the distribution cease on the grounds that ZYX was not licensed to exploit the Melodiya catalogue. Counsel for the ZYX Defendants responded with a request that plaintiffs refrain from instituting litigation while they investigated plaintiffs' claims.

The ZYX Defendants later maintained that they were entitled to exploit the Melodiya Recordings in the United States based on two documents: 1) an agreement between the ZYX Defendants and Philip Allwood pursuant to which ZYX paid a license fee of $225,000 to Allwood in exchange for the exclusive right to distribute the Melodiya Recordings in the United States until 1999 (the

---

**2.** HDA Entertainment Group Ptd. Ltd. is the successor-in-interest to defendant Unidata Solutions Ptd. Ltd., which succeeded Melodiya Australia Pty. Ltd., which in turn succeeded PG Records Pty. Ltd. Philip Allwood was the director of all of these entities.

**3.** There was substantial testimony concerning another addendum to the 1987 Agreement, in which MezhKniga purportedly gave the Allwood

Defendants the right to exploit the Melodiya catalogue in Southeast Asia and Japan. The issue of the validity of this addendum need not be reached at this time.

**4.** Allwood contends that he never received the letter. Since this agreement is not relevant to this motion, I do not need to resolve this issue.

"ZYX License"); and 2) an addendum to the 1987 Agreement dated November 26, 1988, allegedly signed by an MezhKniga representative and purportedly giving Melodiya Australia the right to distribute the Melodiya Recordings in the United States, Japan and Europe (the "U.S. Addendum"). In support of this claim, Allwood submitted an affidavit dated August 16, 1994, stating that the U.S. Addendum was legitimate, that a MezhKniga official named Nikolai Minaev signed the Addendum, and that Allwood had the original Addendum in his possession.

Plaintiffs subsequently commenced an investigation to determine the validity of the U.S. Addendum, which took two months and led them to Europe and Russia, and finally concluded that the U.S. Addendum was a forgery. Based on their belief that ZYX's authorization to distribute the Melodiya Recordings in the United States was premised on a forged document, plaintiffs commenced this action.

## DISCUSSION

### I. Plaintiffs' Motion for Preliminary Injunction

#### A. Standards for Preliminary Injunction

To succeed on their motion for a preliminary injunction, plaintiffs must demonstrate irreparable harm and either 1) likelihood of success on the merits, or 2) serious questions on the merits to make them fair ground for litigation with the balance of hardships tipping decidedly in their favor. *Fisher–Price, Inc. v. Well–Made Toy Manufacturing Corp.*, 25 F.3d 119, 122 (2d Cir. 1994). With respect to plaintiffs' trademark infringement claims, irreparable harm may be presumed upon a showing that plaintiffs' trademark is protectible and that a likelihood of confusion exists as to the ownership or source of goods in question.[5] *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1038 (2d Cir.1992); *Hasbro, Inc. v.*

*Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir. 1988). Proof of confusion also serves as evidence of likelihood of success on the merits in the preliminary injunction context since an essential element of any trademark infringement claim is a likelihood of confusion as to the source of a product arising from the unauthorized use or copy of a trademark. *See Home Box Office v. Showtime/The Movie Channel*, 832 F.2d 1311, 1314 (2d Cir.1987); *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 41 (2d Cir.1986); *Standard & Poor's Corp., Inc. v. Commodity Exchange, Inc.*, 683 F.2d 704, 707 (2d Cir.1982).

#### B. Presumed Irreparable Harm
##### 1. Protectible Mark

The first inquiry is whether Melodiya's trademarks are entitled to protection. Trademarks are grouped in four categories, in ascending order of qualification for protection: 1) generic marks, which are common descriptions and not entitled to protection; 2) descriptive marks, which merely describe the product or convey an immediate idea of the product's characteristics;[6] 3) suggestive marks, which imply rather than literally describe the product's characteristics and require imagination and thought to determine the product's nature; and 4) arbitrary or fanciful marks. *Hasbro, Inc.*, 858 F.2d at 73 (*citing Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976)).

Melodiya contends that its trademarks "MELODIYA" in Cyrillic letters, M design and logo are arbitrary or fanciful and should therefore be afforded the highest degree of protection. ZYX, on the other hand, argues that the trademarks are simply descriptive, and therefore not entitled to any protection absent evidence of secondary meaning. I do not agree with either of these assessments, but rather find that the trademarks are suggestive and therefore entitled to protection without proof of secondary meaning.

---

5. By letter dated February 22, 1995, plaintiffs withdrew their statutory copyright claim would be withdrawn solely for purposes of resolving their preliminary injunction motion.

6. A descriptive trademark is not entitled to protection unless the owner can provide evidence of secondary meaning, *e.g.,* surveys or statistics of consumer recognition. *Hasbro, Inc.*, 858 F.2d at 73.

Melodiya's trademarks are clearly not generic: the word MELODIYA in Cyrillic letters and a patterned "M" on top of concentric circles are not common descriptions of music recordings. Nor are the trademarks descriptive, since they do not immediately convey a sense of the product's nature. The stylized "M" with circles, when taken in context with the word "Melodiya," connotes, but does not immediately convey, a product with some musical nature. While it is true that the word "Melodiya" connotes a product with some musical nature, it does not immediately suggest phonorecords or compact discs. Rather, "Melodiya" could just as easily symbolize other musical products, including song sheets, music paper, etc.[7] Since the trademarks imply a musical product, however, they are not arbitrary or fanciful.

■ Since the trademarks imply the compact discs' musical characteristics and also require some imagination and thought to determine the product's nature, they are suggestive marks and entitled to protection without proof of secondary meaning. *See Physicians Formula Cosmetics v. West Cabot Cosmetics*, 857 F.2d 80, 82 (2d Cir.1988) (trademark name "Physicians Formula" suggestive since it does not explicitly describe the product but does identify it as medicinal); *see also Hasbro, Inc.*, 858 F.2d at 75; *Thompson Medical Co. v. Pfizer Inc.*, 753 F.2d 208, 216 (2d Cir.1985). The trademarks are also entitled to protection since they are registered. *Church of Scientology*, 794 F.2d at 41.[8]

### 2. *Consumer Confusion*

■ Since I have determined that Melodiya's trademarks are suggestive and entitled

to protection, the next inquiry is whether ZYX's products create a likelihood of consumer confusion as to the source or ownership of the Melodiya Recordings. Plaintiffs argue that there is a likelihood of confusion since defendants claim entitlement to Melodiya's trademarks through the U.S. Addendum, which plaintiffs allege is forged. ZYX acknowledges that "the use of the Melodiya name and logo on [its] CDs is required pursuant to the 1987 Agreement." (ZYX Mem. at 40). Defendants argue, however, that the U.S. Addendum is genuine and entitles them to use those marks. Based upon the evidence presented at the hearing, I find that plaintiffs have shown that the Addendum is a forgery and that any rights claimed by defendants to exploit the Melodiya catalogue are illusory. Accordingly, plaintiffs have demonstrated a likelihood of confusion as to the source or sponsorship of the Melodiya Recordings.

Three MezhKniga officials, Nikolai Minaev, Igor Preferansky, and Alexander Belostotsky, affirmed, either through testimony or in sworn statements, that MezhKniga never gave the Allwood Defendants any rights to distribute Melodiya recordings in the United States. Mr. Minaev, the MezhKniga official who Allwood claims signed the U.S. Addendum, testified that he never signed the Addendum and that the Addendum was a forgery. Mr. Minaev made three further observations. First, the Addendum listed, in handwriting, three disparate territories: the United States, Japan and Europe. Mr. Minaev's territory was Australia, while other officials had authorization for the United States and Europe, and it would have been "impossible" to mix all three territories in

---

7. Trademarks that have been deemed descriptive include Chapstik and Holiday Inn. *Hasbro, Inc.*, at 73.

8. ZYX argues that Melodiya's trademarks should not be afforded protection because 1) the word "Melodiya" was initially denied registration and 2) other trademark registrations exist using the same or similar names and logos. Both of these arguments are rejected. First, regardless of the trademarks' prior history, they were validly registered in 1992, well before ZYX entered into its agreement with the Allwood Defendants and before ZYX distributed its compact discs in New York. Additionally, while the word "Melodiya"

may have encountered some problems with registration, Melodiya's "M" logo, which ZYX prominently displays on its products, suffered no such difficulties. Second, analysis of the trademark report submitted by ZYX (Meloni Decl.Exh. C) reveals that nearly all of the listed trademarks are modifications of the word "Melody" in English, which is clearly not the same as the word "Melodiya," in either English or Cyrillic. The same is true of the "M" logo: none of the trademarks listed in the report is even remotely similar to Melodiya's highly stylized "M" with concentric circles.

one document. (Tr. at 25). In addition, the Allwood Defendants could not be the "second buyer" of the Melodiya Recordings in Japan as indicated on the Addendum,[9] since the Japan territory already had four buyers. (Tr. at 18). Finally, Mr. Minaev testified that the other signature on the U.S. Addendum, purportedly Mr. Fomichev's, was also a forgery. (Tr. at 26). Mr. Minaev was credible, and I accept his testimony.

Mr. Minaev's testimony that the U.S. Addendum is a forgery was corroborated by Igor Preferansky, a MezhKniga director and MezhKniga's representative in the United States from 1985 to 1989, and Alexander Belostotsky who, from 1966, was MezhKniga's Deputy General Director and the second senior official with deal-making authority for the United States. Mr. Preferansky confirmed in his affirmation and at the hearing that he met with Philip Allwood in September 1988 in Washington, D.C. to discuss the possible exploitation of the Melodiya Recordings in the United States, a proposal that was ultimately rejected by MezhKniga. (Tr. at 210–12; Preferansky Affirm. ¶ 13). Mr. Preferansky also stated that the U.S. Addendum seemed "suspicious" since the territories were handwritten, which was unusual for MezhKniga. (Tr. at 209). Finally, he testified that he was first shown the U.S. Addendum in July 1994 in Moscow and that a search through MezhKniga's files by his employees failed to uncover a copy of the Addendum or any similar document. (Tr. at 208). I find that Mr. Preferansky also was credible, and I accept his testimony.

Mr. Belostotsky stated in his affidavit that MezhKniga never granted the Allwood De-

fendants any rights to distribute the Melodiya Recordings outside of Hong Kong, Australia and New Zealand. He also affirmed that he did not sign the U.S. Addendum and, indeed, did not see it until July or August 1994.

Additional evidence of forgery came from plaintiffs' handwriting expert, Gus Lesnevich. Mr. Lesnevich compared a facsimile and photocopy of the U.S. Addendum against twenty known and undisputed samples of Mr. Minaev's signature taken at approximately the same time as the disputed signature and noted numerous drastic discrepancies between the disputed and genuine signatures, including differences in the initial writing movements and the final stroke. (Tr. at pp. 120–22; Pl.Exh. 14). Based on this analysis, Mr. Lesnevich testified that the signature on the U.S. Addendum, purported to be Mr. Minaev's signature, was a "poorly simulated signature, modeled after a genuine signature." (Tr. at 121).[10]

Mr. Lesnevich reached a similar conclusion with respect to the signature on the U.S. Addendum purported to be Mr. Fomichev's signature. He compared the Addendum to two known examples of Mr. Fomichev's signature and noted at least 9 differences between the signatures, including differences in the starting stroke, "O" shape, and size and shape of the loops on the "F," and concluded that Mr. Fomichev's signature was also a forgery. (Tr. at 115–18; Pl.Exh. 13). I find Mr. Lesnevich's conclusions to be logical and well-based, and his testimony is accepted.

Most damaging perhaps to defendants' position is the report of the Allwood Defen-

---

9. Melodiya provided rights to its library by first buyer, second buyer, etc. The first buyer had first choice of any of the recordings it wanted to distribute; the second buyer was limited to distributing its choice of the remainder. If any recordings remained, the third buyer would have its pick. (Tr. at 19).

10. Mr. Lesnevich qualified his opinion by basing his conclusions on the assumption that the copies of the U.S. Addendum were a genuine reproduction of the original document. I am not concerned that his opinion might be compromised by the missing original Addendum for three reasons. First, Mr. Lesnevich testified that Mr. Minaev's simulated signature was so poor that it was not necessary to analyze the original. (Tr. at

123). Second, Philip Allwood previously declared in a sworn statement that he had the original Addendum in his position, but later maintained that it was lost. Finally, Allwood himself did not appear at the hearing to rebut the allegations of forgery or to explain in person the circumstances of the missing document. Although Allwood offered an excuse for not coming to testify, I do not accept it, and his failure to testify, coupled with his inability to produce the purported original U.S. Addendum after he claimed to have it, support the conclusion that the Addendum is a forgery. *See Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 73, 75 (S.D.N.Y.1991).

dants' own handwriting expert, Leonard Timewell. Mr. Timewell compared Mr. Minaev's signature on 14 undisputed samples against the U.S. Addendum and concluded that the disputed signature was "simulated." He also declared, however, that he could not eliminate the possibility that the disputed signature on the Addendum was written by Mr. Minaev for the purpose of later repudiation. I reject this conclusion since there is absolutely no evidence in the record to support such a finding. Finally, Mr. Timewell stated that he could not reach a definitive conclusion as to Mr. Fomichev's signature, but noted that there appeared to be pronounced differences. Mr. Timewell did qualify his conclusion by stating that severe limitations were placed on the accuracy of his assessment since the Addendum was only a photocopy.

In an attempt to support their position that the Addendum is genuine, defendants submitted an affidavit dated July 14, 1994 of Igor Pleschenko, who has been an Assistant to the Trade Representative of the Russian Federation in Australia since 1994 and who was previously an employee of MezhKniga. Mr. Pleschenko stated in his affidavit that MezhKniga had granted the Allwood Defendants the right to sell Melodiya recordings in the United States. I do not give any weight to this statement, however, for two reasons: 1) Mr. Pleschenko submitted a letter on August 10, 1994, withdrawing his affidavit and declaring it "null and void" because he had no personal knowledge of the information contained in the affidavit and had merely been relying on Allwood's representations; and 2) Mr. Pleschenko's duties with MezhKniga did not involve the licensing of Melodiya recordings during the time in question. (Tr. at 48).

Based on all of the above evidence, I find that the U.S. Addendum is a forgery; consequently, it is invalid. As the ZYX Defendants concede that their right to distribute

the Melodiya Recordings derive from the Addendum (Tr. at 330), I find that there is a likelihood of confusion as to the source or sponsorship of the Melodiya Recordings. *See Church of Scientology*, 794 F.2d at 41 (district court's finding of likelihood of confusion affirmed where defendant, a former licensee of plaintiff, continued to use plaintiff's trademark after the license terminated).

Since Melodiya's trademarks are entitled to protection and plaintiffs have shown a likelihood of consumer confusion, irreparable harm must be presumed.[11] *See Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70 (2d Cir. 1988); *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d at 41.

### C. *Actual Irreparable Harm*

Plaintiffs maintain that they will suffer actual irreparable harm if a preliminary injunction is not issued, due primarily to the inferior quality of the ZYX products, the discounted prices charged by ZYX, and the unique character of the classical music customer base. Based on the evidence presented at the hearing, I find that plaintiffs have demonstrated actual irreparable harm.

The evidence presented at the hearing reveals that the disc packaging on ZYX's compact discs is not up to industry standards, for several reasons. First, the liner notes, which are important to a sophisticated consumer's appreciation of classical music, in many instances did not discuss the music on the particular compact disc but instead referred to unrelated compositions. (Tr. at 154–55; 287). In addition, the artwork on the labels routinely bore no relationship either to the composer or the compositions and was generally of inferior quality. (Tr. at 167). Furthermore, most of the discs failed to note total playing time, which in most instances was far less than the 60 (or more) minutes generally contained in classical music compact discs. (Tr. at 157–60; 288–89). Finally,

11. Defendants have not rebutted the presumptions accorded to trademark registrants. Defendants argue strenuously that plaintiffs' marks were used in the United States as early as 1988, by both the Allwood Defendants and others. I reject the contention, supported primarily by a magazine article that is pure hearsay, that All-

wood used the marks in the United States as early as 1988. As to the evidence of use of the marks by others, the fact of the matter is that defendants in this case had *no* right to use the marks in the United States, since their purported right to do so was based on a forged document.

BMG's executive producer, James Pfeiffer, testified that, based on his analysis of 26 ZYX compact discs containing the Melodiya Recordings (some of which were provided by ZYX and some of which were purchased randomly in New York stores), the quality of the ZYX discs as a whole ranged from moderate to inferior. (Tr. at 153; Pl.Exh. 27). Mr. Pfeiffer also noted that while some of the inferior sonic quality could be attributed to the original recording, quality digital remastering could have improved the sonic quality. (Tr. at 164).

In contrast, examination of BMG's anticipated product, including liner notes, packaging artwork, and a fully remastered compact disc (which contained the same recording as one of the ZYX discs provided to the Court (Pl.Exh. 30)), reveals that the BMG product will undoubtedly be of a higher quality. The liner notes for BMG's anticipated releases of Melodiya's recordings refer to the music contained on the disc, are much longer than ZYX's liner notes (24 pages in one instance) and written in three languages. (Tr. at 168). In addition, the artwork for the disc labels are reproductions of original art bearing some relationship to the music on the disc. (Tr. at 167). Finally, Mr. Pfeiffer testified that the anticipated BMG product had a longer playing time than most of ZYX's compact discs and that the music had a lower "hiss" level, reflecting an earlier recording and providing better texture to allow a fuller appreciation of the music. (Tr. at 163).

I find, based on the evidence presented, that the ZYX discs are of somewhat inferior quality due primarily to the substandard packaging, the erroneous liner notes and the shortened playing time. Accordingly, plaintiffs would suffer irreparable damage to their reputation, particularly in light of BMG's anticipated release of Melodiya recordings. *See Saban Entertainment, Inc. v. 222 World Corp.*, 865 F.Supp. 1047 (S.D.N.Y.1994) (irreparable harm demonstrated by sale of defendant's "cheap and inferior" products which caused damage to plaintiff's reputation); *RCA Records v. All–Fast Systems,*

*Inc.*, 594 F.Supp. 335 (S.D.N.Y.1984) (irreparable harm demonstrated by defendant's sale of monaural copies of stereophonic tapes).

I also find that plaintiffs will be damaged by ZYX's discount, or cut-rate, price for its compact discs. ZYX is selling its discs at a discount price of $5.99, which is at the low-end of the range of prices for compact discs. (Tr. at 293). BMG, on the other hand, anticipates selling its compact discs for $11.99, double the price of the ZYX discs. (Glicker Aff. ¶ 13). ZYX's continued sale at a discount rate makes it more difficult for BMG to later release the same recordings at a higher price. *See Nature's Bounty, Inc. v. SuperX Drugs Corp.*, 490 F.Supp. 50, 55 (E.D.N.Y.1980) ("The availability for sale at a lower price of [defendant's products] may severely damage plaintiff in terms not only of potential profits, but also of goodwill.").

Finally, the limited customer base for classical music contributes to the injury suffered by BMG, since it is unlikely that a classical music consumer would purchase the same recording twice.[12]

### D. *Likelihood of Success on the Merits*

Since plaintiffs have shown that they would suffer irreparable harm by ZYX's continued distribution of the Melodiya Recordings, I now must determine whether plaintiffs demonstrated a likelihood of success on the merits.

#### 1. *Trademark Claims*

To succeed on a claim of trademark infringement, plaintiffs must show that a likelihood of confusion as to the source or sponsorship of the Melodiya Recordings exists due to defendants' unauthorized use of the Melodiya trademarks. *See Home Box Office v. Showtime/The Movie Channel*, 832 F.2d 1311, 1314 (2d Cir.1987); *Standard & Poor's Corp., Inc. v. Commodity Exchange, Inc.*, 683 F.2d 704, 708 (2d Cir.1982). I find that plaintiffs have met their burden of demonstrating a likelihood of success on the merits. As discussed more fully above, plaintiffs

---

12. ZYX argues that plaintiffs have not shown irreparable harm since they unreasonably delayed in commencing their lawsuit. This argument is rejected since plaintiffs acted swiftly upon learning of ZYX's distribution in the United States, delaying the commencement of litigation only because of ZYX's requests to refrain from litigation. (Hayes Aff.Exhs. M and P).

**1316**

have shown that the document upon which defendants base their rights to distribute the Melodiya Recordings in the United States is, in fact, a forgery. Since the Allwood Defendants granted a license to ZYX to distribute the Melodiya Recordings in the United States based on the U.S. Addendum and ZYX concedes it is required by that license to display Melodiya's trademarks, plaintiffs have demonstrated a likelihood of success on their claim of trademark infringement.[13] *See Hasbro, Inc. v. Lanard Toys, Ltd.,* 858 F.2d 70, 73 (2d Cir.1988); *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology,* 794 F.2d at 41 (likelihood of success on the merits established where former licensee admitted using licensor's trademarks and licensor proved licensee did not have authority to use those marks). I reach the same conclusion with respect to plaintiffs' claim of trademark dilution under New York state law. *See Saban Entertainment, Inc. v. 222 World Corp.,* 865 F.Supp. 1047 (S.D.N.Y. 1994).

### 2. *Common Law Claims*

 Although plaintiffs have withdrawn their federal statutory copyright claim as a basis for preliminary injunctive relief, defendants may still be enjoined from distributing their unauthorized copies of Melodiya's master recordings under the theories of common law copyright infringement and unfair competition.[14] Defendants do not deny that they are distributing copies of Melodiya's master recordings but rather claim, on

the basis of the U.S. Addendum, entitlement to do so. (Urban Decl. ¶ 3; Tr. at 330). Their claim of entitlement, however, is based on a document that I have now found to be a forgery. Hence, defendants' claim of entitlement falls by the wayside, and they have no right to copy or distribute the Melodiya Recordings. Plaintiffs have therefore demonstrated a likelihood of success on their common law claims of copyright infringement and unfair competition. *See Radio Corp. of America v. Premier Albums, Inc.,* 19 A.D.2d 62, 240 N.Y.S.2d 995 (1st Dep't 1963) (preliminary injunction granted where defendants, pursuant to a license erroneously given by a third party, produced a record album containing plaintiff's recordings); *Greater Recording Co., Inc. v. Stambler,* 144 U.S.P.Q. 547 (N.Y.Sup.Ct.1965) (motion to dismiss denied where defendant allegedly produced and distributed records made directly from plaintiffs' recordings); *Capitol Records, Inc. v. Greatest Records, Inc.,* 43 Misc.2d 878, 252 N.Y.S.2d 553 (N.Y.Sup.Ct.1964) (defendant enjoined from manufacturing and distributing record album containing identical reproductions of certain records sold by plaintiff); *see also Capitol Records, Inc. v. Mercury Records Corp.,* 221 F.2d 657 (2d Cir.1955) (plaintiff did not lose exclusive right to reproduce and sell records in the United States by putting records on public sale).

### II. *ZYX's Motion to Dismiss*

ZYX moves to dismiss the complaint on two grounds: 1) the Allwood Defendants,

---

**13.** At the hearing, Michael Urban, ZYX's inhouse counsel, voiced a concern that the issuance of a preliminary injunction in this case would brand ZYX as a "music pirate." I believe that ZYX initially acted in good faith under the mistaken belief that it had purchased the right to distribute the Melodiya Recordings, and that it is a victim of deceit and fraud. Nonetheless, by continuing to sell the Melodiya Recordings after it suspected that the U.S. Addendum was a forgery (*see* Pl.Exh. 36), ZYX exercised questionable judgment.

**14.** Melodiya's common law copyright and unfair competition claims are not preempted by the Federal Copyright Act since the master recordings were made prior to February 15, 1972, the date when Congress first extended federal copyright protection to sound recordings. *See Dowling v. United States,* 473 U.S. 207, 211 n. 4, 105 S.Ct. 3127, 3130 n. 4, 87 L.Ed.2d 152 (1985)

(dictum) (federal copyright protection not afforded to sound recordings "fixed" before February 15, 1972); *Silverman v. CBS, Inc.,* 870 F.2d 40, 43 n. 2 (2d Cir.), *cert. denied,* 492 U.S. 907, 109 S.Ct. 3219, 106 L.Ed.2d 569 (1989) (state law copyright governed pre–1948 radio broadcasts); 1 Nimmer on Copyright §§ 2.10[A](1) and [B] (1994) ("Sound recordings 'fixed' prior to February 15, 1972 are ineligible for statutory copyright, but may remain the subject of common law copyright or other state law protection."). Additionally, some of the Melodiya recordings are not entitled to federal copyright protection since they were made before May 27, 1973, when the USSR signed the Universal Copyright Convention, which entitles foreign works to copyright protection in the United States. *See London Film Productions v. Intercontinental Communications, Inc.,* 580 F.Supp. 47, 50 n. 5 (S.D.N.Y.1984); 3 Nimmer on Copyright, Appendix 25 (1994).

who previously moved for dismissal, are indispensable parties; and 2) *forum non conveniens*. By Memorandum Decision dated January 24, 1995, I denied the Allwood Defendants' motion to dismiss. Accordingly, ZYX's argument that the complaint should be dismissed because the Allwood Defendants are not present is rejected. ZYX's motion to dismiss on *forum non conveniens* grounds is denied.

### A. Standards Applicable to Forum Non Conveniens Motions

■■■■ Under the common law doctrine of *forum non conveniens*, a court with proper jurisdiction and venue over a matter may refrain from hearing the case if another significantly more appropriate forum exists. *See Nationsbank of Florida v. Banco Exterior de Espana*, 867 F.Supp. 167, 169 (S.D.N.Y. 1994). To determine whether a complaint should be dismissed on *forum non conveniens* grounds, I must consider two issues: 1) the availability of an alternate forum and 2) the balance of private and public interests weighed against the plaintiff's choice of forum. *See Gulf Oil v. Gilbert*, 330 U.S. 501, 506–07, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 254 n. 22, 102 S.Ct. 252, 258, 265 n. 22, 70 L.Ed.2d 419 (1981).[15] While the moving party bears the burden of showing that an alternative forum is clearly more appropriate, *Oil Basins Ltd. v. Broken Hill Proprietary Co.*, 613 F.Supp. 483, 489 (S.D.N.Y.1985), the decision to grant or deny the motion to dismiss is entirely within my discretion. *Piper Aircraft*, 454 U.S. at 257, 102 S.Ct. at 266.

### B. Adequacy of Alternate Forum

■■■■ Generally, an alternate forum will be considered adequate when the defendant is "amenable to process" there. *See Gulf Oil*, 330 U.S. at 506–07, 67 S.Ct. at 842;

*see also R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 167 (2d Cir.1991) (*citing Piper Aircraft v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). ZYX maintains that Australia is an adequate alternate forum. The only support for this assertion, other than the fact that the Allwood Defendants are Australian citizens, is ZYX's equivocal suggestion that it "may" be subject to suit in Australia. (ZYX Mem. at 22). This suggestion is insufficient to establish the existence of an adequate alternate forum. *Cf. Georgiadis v. First Boston Corp.*, 1994 WL 392229, *2 (S.D.N.Y.1994) (district court considered England adequate alternate forum where defendant submitted affidavits from expert in English law affirming that defendant would be amenable to suit there).

### C. Balance of Factors

■■■ Even assuming that Australia is an adequate alternate forum, ZYX still has the burden of showing that, notwithstanding the presumption accorded plaintiff's choice of forum, the balance of private and public interests requires dismissal. *See Manu International S.A. v. Avon Products*, 641 F.2d 62, 65 (2d Cir.1981); *Editorial Musical Latino Americana v. Mar International Records, Inc.*, 829 F.Supp. 62, 66 (S.D.N.Y.1993). ZYX has not met this burden.

First, plaintiffs have chosen this forum and their choice must be given substantial deference. *See Gulf Oil*, 330 U.S. 501, 508, 67 S.Ct. 839, 843 (1947); *see also Editorial Musical Latino Americana*, 829 F.Supp. at 66 (*citing Lipton v. The Nature Co.*, 781 F.Supp. 1032, 1036 (S.D.N.Y.1992)). Courts are particularly reluctant to disturb a plaintiff's choice of forum when the action involves, as here, an American plaintiff against a foreign defendant. *See Nationsbank of Florida v. Banco Exterior de Espana*, 867 F.Supp. 167, 171 (S.D.N.Y.1994) (citing cases).[16]

*M.G. Chem. Co.*, 942 F.2d 164, 166 (2d Cir.1991) (*citing Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843).

---

**15.** The public factors to be considered include the interest in resolving localized controversies at home and determination of foreign law issues. The private factors include the ease of access to sources of proof, the availability of compulsory process and the ability to enforce judgments, and additional practical considerations that make trial easy or expeditious. *R. Maganlal & Co. v.*

**16.** ZYX's argument that plaintiffs' choice of forum should not be given any weight because both plaintiffs are foreign entities is rejected. First, plaintiffs allege that BMG is a New York partnership with its principal place of business in New

Second, the balance of public and private factors weighs in favor of plaintiffs. With respect to the public factors, the interest in keeping localized controversies at home clearly supports keeping this case with this Court. The central issues to this case concern alleged violations of United States trademark and copyright laws, not, as ZYX asserts, foreign contract law.[17] In addition, the disputed compact discs are being sold in New York. Furthermore, the need to analyze foreign law, if at all, is slight, and at any rate, is not dispositive of a motion to dismiss. *R. Maganlal,* 942 F.2d at 169.[18]

The private factors also weigh in favor of denying the motion to dismiss. First, ZYX Music Distribution Ltd., the distribution arm of ZYX GmbH, is a New York corporation with its principal place of business in West Babylon, New York. Accordingly, the ZYX Defendants cannot claim that New York is an inconvenient forum. *See Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.,* 657 F.Supp. 1040, 1061 (S.D.N.Y.1987). Since ZYX Music Distribution Ltd. is a New York corporation, the enforcement of a judgment against the ZYX Defendants is not a concern.

Second, while many of the witnesses are located abroad, many are located in New York, as both BMG and ZYX Music Distribution Ltd. are New York entities. Furthermore, although I am somewhat concerned about the lack of compulsory process over non-party witnesses, this concern is obviated by the fact that, as evidenced by the numerous non-party witnesses who testified at the preliminary injunction hearing, the foreign witnesses are willing to come to the United States to testify at plaintiffs' expense. *See Flynn v. General Motors, Inc.,* 141 F.R.D. 5

(E.D.N.Y.1992) (forum non conveniens motion denied where defendant did not show that foreign witnesses were "unwilling to testify in the United States"); *see also Overseas Programming v. Cinematographische Commerz–Anstalt,* 684 F.2d 232, 235 (2d Cir.1982) (difficulties in compelling foreign witnesses to testify may be resolved by use of deposition testimony or letters rogatory). Finally, ZYX's argument that key documents relating to this case are with the Allwood Defendants in Australia does not require the dismissal of this case where the parties have exchanged copies of those documents and Allwood claims the originals are lost.

The ZYX Defendants have failed to show that an adequate alternate forum exists or that the balance of factors is sufficient to overcome plaintiffs' choice of forum. Accordingly, the motion to dismiss is denied.

### *CONCLUSION*

Plaintiffs have demonstrated both irreparable harm and a likelihood of success on the merits with respect to their trademark infringement, trademark dilution, unfair competition and common law copyright infringement claims. Accordingly, plaintiffs' motion for a preliminary injunction is granted. Defendants are hereby enjoined from 1) manufacturing, copying, distributing or selling any Melodiya classical music sound recordings; and 2) using, reproducing, copying or displaying on any product the designations Melodiya, Melodiya in Cyrillic letters or Melodiya's trademark M design and logo. Counsel for plaintiffs are directed to submit an order and injunction consistent with this opinion within seven days hereof in accordance with

York. (Complaint ¶ 4). Second, I would still accord some deference to plaintiffs' choice of forum even if it were true that BMG is a foreign corporation, since a dismissal based on *forum non conveniens* is the exception rather than the rule. *R. Maganlal,* 942 F.2d at 167.

**17.** ZYX's reliance on *Ente Nazionale Idrocarburi v. Prudential Securities Group, Inc.,* 744 F.Supp. 450 (S.D.N.Y.1990), is misplaced. The district court in *Ente* granted the motion to dismiss because the focus of the action was a contract that was to be interpreted under Italian law. *Id.* at 462. Here, defendants, not plaintiffs, are asserting a contractual defense. ZYX's argument that

the motion should be granted since the 1987 Agreement requires arbitration in Moscow is similarly unavailing, because it is the U.S. Addendum which is at issue here and that document has been shown to be a forgery.

**18.** ZYX also argues that court congestion in this district mandates dismissal of this case. Court congestion, however, is not dispositive of a motion to dismiss based on *forum non conveniens,* particularly when, as here, a court has some familiarity with the case. *See Hatzlachh Supply, Inc. v. Savannah Bank of Nigeria,* 649 F.Supp. 688, 693 (S.D.N.Y.1986).

the procedures set forth in Civil Rule 8. The order must provide for the issuance of a bond by plaintiffs in an amount to be agreed upon by the parties. If the parties cannot agree on an amount, they shall submit letters to the Court within one week hereof setting forth their positions on the amount of the bond, and I will decide the amount to be posted.

ZYX's motion to dismiss based on *forum non conveniens* is denied.

SO ORDERED.