**MINIBOOSTER HYDRAULICS A/S, f/ka Iversen Hydraulics ApS, a Danish corporation, Plaintiff,**

**v.**

**SCANWILL FLUID POWER ApS, f/k/a Iversen Fluid Power ApS, a Danish corporation, et al., Defendants.**

**No. 02–CV–0892C(SC).**

United States District Court, W.D. New York.

March 20, 2004.

Holland & Knight LLP (Tamara F. Carmichael, Esq. and James v. Marks, Esq.,of Counsel), New York, New York, for Plaintiffs.

Hodgson Russ LLP (Daniel C. Oliverio, Esq., and Kathleen M. Sellers, of Counsel), Buffalo, New York, for Defendants Scanwill and Iversen.

Phillips, Lytle, Hitchcock, Blaine & Huber LLP (Jeremiah J. McCarthy, Esq., of Counsel), Buffalo, New York, for Defendants Sherex, Scherf and Johnson.

CURTIN, District Judge.

## INTRODUCTION

On April 11, 2003, defendants Scanwill Fluid Power and Jesper Iversen filed a motion to dismiss pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure based on the doctrine of *forum non conveniens.* Item 6. Plaintiff Minibooster Hydraulics is a Danish corporation, as is defendant Scanwill Fluid Power, and defendant Jesper Iversen is a Danish resident. He is a principal of Scanwill (formerly Iversen Fluid Power), and was a former principal of Minibooster (formerly Iversen Hydraulics). Defendant Sherex is a New York corporation, and defendants Scherf and Johnson are principals in that business.[1]

In their motion, defendants argue that this litigation is duplicative of a lawsuit that is pending in Denmark and has been initiated solely to harass the defendants. They seek an order dismissing the claims against them or, in the alternative, a stay pending the resolution of the Danish litigation. Finally, they seek a dismissal of the case as against Mr. Iversen for lack of personal jurisdiction.

Plaintiff filed an opposition to the motion on June 20, 2003. Items 15, 16. Defendants then filed a reply on July 25, 2003. Items 18, 19. On August 8, 2003, plaintiff filed a motion for leave to file a sur-reply. Items 21, 22. Oral argument was heard on October 1, 2003. Permission to file a sur-reply was granted on December 18, 2003, and the sur-reply was filed on January 6, 2004. Item 30. For the reasons that follow, the defendants' motion to dismiss is denied.

## BACKGROUND and FACTS

Plaintiff commenced this action on December 11, 2002 (Item 1) alleging eight causes of action. Against all defendants, it asserts violations of the Lanham Act, 15 U.S.C. § 1125, for unfair competition and trade dress infringement (Counts I and II), claims of unfair competition under both the common law and New York law (Counts III and IV), unjust enrichment (Count V), and common law trademark infringement (Count VI). Plaintiff also seeks an accounting of profits derived from the allegedly wrongful use of plaintiff's trademark and intellectual property (Count VII), and alleges a breach of distributorship agreement as against defendant Sherex alone (Count VIII). Plaintiff seeks preliminary and permanent injunctive relief, treble damages, costs, and attorney fees.

Plaintiff is the manufacturer of hydraulic pressure boosters, and sells them worldwide through authorized distributorships. Plaintiff changed its name from Iversen Hydraulics to Minibooster Hydraulics in October 2000, but alleges that it continues to do business and be known as Iversen. Item 1, ¶ 2.

---

**1.** For purposes of this motion and unless otherwise indicated, references to "defendants" will denote Jesper Iversen (the individual) and/or Scanwill (the Danish corporation).

Between 1996 and 1999, Sherex was the exclusive distributor for plaintiff's products in the United States, Canada, and Mexico. The distributorship agreement provided that, upon its termination, Sherex was precluded from selling competitive products for a period of five years. Item 1, ¶¶ 191–20, Exh. 1. The New York defendants admit in their answer that Sherex is a New York corporation. Item 14, ¶ 1.

Between 1993 and 2000, defendant Jesper Iversen was a principal of Minibooster, then Iversen Hydraulics. On or about July 7, 2000, Minibooster and Iversen entered in an agreement whereby Iversen ceased to be a principal or have any ownership interest in the company. However, plaintiff alleges that in 2002, Iversen began to sell booster products under the Iversen name, with a trade dress similar to plaintiff's. Item 1, ¶ 25. Plaintiff alleges that the products were distributed through Sherex. *Id.* at ¶ 26. Plaintiff also alleges that defendants' manufacture and sale of identical products were intended to confuse consumers into thinking that Scanwill products were those of Minibooster.

In their motion to dismiss, defendants Iversen and Scanwill have submitted a declaration of Peter Prag, a Danish attorney who represents the defendants in a suit brought by Minibooster in the Danish commercial court. Item 7. He asserts that Minibooster has adequate remedies in the Danish court, and that this lawsuit is duplicative and brought solely for the purpose of causing the defendants further expense. In support of this argument, he recounts the threat of a U.S. lawsuit by plaintiff's attorney, Bo Jorgensen. *Id.*, at ¶ 9. Mr. Prag also states that the termination agreement between plaintiff and Mr. Iversen is an agreement between Danish parties that should be determined according to Danish law.

Defendant Jesper Iversen also submitted a declaration, in which he stated that he is a citizen and resident of Denmark, and Scanwill is incorporated under the laws of Denmark. It has no offices, employees, or bank accounts in New York State. Item 9, ¶¶ 2–3. Scanwill has no distributorship agreement with Sherex, and made only one sale to Sherex, in 2002, with a value of approximately $10,000. *Id.*, at ¶¶ 4–5.

In opposition to the motion, plaintiff submitted declarations of Christen Eperson, plaintiff's president, Bo Jorgenson and Nicolai Lindgreen, plaintiff's Danish attorneys, and the New York defendants, Andrew Johnson and Kevin Scherf. Mr. Espersen stated that Minibooster continues to do business under the Iversen name, and that the Iversen trademark is pending registration in the U.S. Patent and Trademark Office. Item 27, Exh. 2 ("Epersen"), ¶¶ 2, 4. Mr. Espersen states that, pursuant to the termination agreement between him and Mr. Iversen, plaintiff owns all intellectual property of the company. *Id.*, at ¶ 5. In 2002, defendant Iversen began selling booster products in the United States, and has caused significant harm to plaintiff in the United States in violation of U.S. law. *Id.* at ¶ 11.

Mr. Lindgreen states that the Danish proceedings are distinctly different from this case. Specifically, he states that the Danish case involves breaches of Danish law in Denmark, including use of the Iversen name in Denmark, the non-compete agreement between Jesper Iversen and Minibooster, and violations of the Danish Marketing Practices Act. Item 27, Exh. 1 ("Lindgreen"), ¶¶ 3–4. The Danish case does not allege the violation of any U.S. law.

Mr. Jorgensen states that Mr. Prag "distorts what was actually said" during a meeting in August 2002. He merely told

Prag that "if settlement could not be reached, Plaintiff would have no choice but to bring suit in the U.S. and Denmark based upon the separate law violations and that such litigation is expensive." Item 23, Ex. 1 ("Jorgensen"), at ¶ 4.

Finally, defendants Scherf and Johnson submitted declarations in opposition to the motion. They state that Jesper Iversen had business contacts with them in New York, including a distributorship agreement with Sherex, telephone and fax communications between Iversen and Sherex, and the receipt of promotional materials from defendants by Sherex for use in distributing defendants' products in New York and the United States. Item 23, Exh. 2 (Sherex).

In its sur-reply, plaintiff states that the Iversen trademark has not been refused by the U.S. Patent Office, but is undergoing the review process and will be registered if it is unopposed. Item 30, p. 2. Additionally, it states that Minibooster continues to use the Iversen name in the course of its business. Item 30, p. 3.

## DISCUSSION

### I. *Forum non Conveniens*

■ Under the doctrine of *forum non conveniens*, a district court may dismiss a case when an alternative forum has jurisdiction to hear the case and when trial in the chosen forum would be oppressive and vexatious to a defendant. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1232 (2d Cir.1996). An alternative forum is adequate if (1) the defendants are subject to service of process there and (2) the forum permits litigation of the subject matter of the dispute. *Piper*, 454 U.S. at 254 n. 22, 102 S.Ct. 252; *Capital Currency Exchange, N.V. v. Nat'l*

*Westminster Bank PLC*, 155 F.3d 603, 609 (2d Cir.1998), *cert. denied*, 526 U.S. 1067, 119 S.Ct. 1459, 143 L.Ed.2d 545 (1999). If an adequate forum exists, the court must consider several public and private interest factors in deciding whether to give deference to the plaintiff's choice of forum. The public factors include court congestion in the chosen forum, the local interest in deciding local controversies at home, the interest in having the trial in a forum that is familiar with the governing law, the difficulties in applying foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty. Private factors include the ease of access to sources of proof and the ability and cost of procuring witnesses. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Scottish Air*, 81 F.3d at 1232. There is generally a strong presumption in favor of plaintiff's chosen forum, although the presumption is weaker when the plaintiff or real parties in interest are foreign. *Piper*, 454 U.S. at 255, 102 S.Ct. 252; *Capital Currency*, 155 F.3d at 609. It is the burden of the moving party to establish that the alternative forum is "clearly more appropriate." *Firma Melodiya v. ZYX Music GmbH*, 882 F.Supp. 1306, 1317 (S.D.N.Y.1995). Dismissal will generally be inappropriate unless "the balance of convenience tilts strongly in favor of trial in the foreign forum." *R. Maganial & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 167 (2d Cir.1991); *Capital Currency*, 155 F.3d at 609.

■ Defendants contend that the courts of Denmark provide an adequate forum for the resolution of issues between the parties, and that there is similar litigation currently pending in Denmark. They also argue that plaintiff's choice of forum is entitled to little deference, and that the public and private factors weigh in favor of dismissal.

Assuming the existence of an adequate alternative forum, the balance of the private and public factors favors trial of this action in the plaintiff's chosen forum. Initially, dismissal is not mandated by the choice of a New York forum by this Danish plaintiff. Rather, "some weight" must be given to the foreign plaintiff's choice of forum, as dismissal for *forum non conveniens* is the exception rather than the rule. *Cromer Finance Ltd. v. Berger*, 158 F.Supp.2d 347, 354 (S.D.N.Y.2001) (quoting *Murray v. British Broadcasting Corp.*, 81 F.3d 287, 290 (2d Cir.1996)).

Plaintiff alleges unfair competition and trademark infringement with respect to sales of its products in the United States. Accordingly, the proof of these violations, and witnesses to these transactions, are in this country. The court recognizes that some documentary proof may be produced from Denmark and some witnesses may be located there, but both parties are inconvenienced by the necessity of travel. With respect to the public interest in keeping localized controversies at home, plaintiff alleges violations of New York State, federal, and common law. While plaintiff has raised similar issues in the Danish court, that suit involves violations in Denmark pursuant to Danish law. This action is essentially a local dispute, and should be determined in the plaintiff's chosen forum. Defendants have noted this court's busy calendar, yet have made no showing that this case cannot be resolved in an efficient and expeditious manner. Finally, while the court will be called upon to construe the Danish termination agreement to determine the extent of the rights of the parties, the central issues involve violations of State and federal law, not Danish law. In any event, the need to apply foreign law alone is not sufficient to warrant dismissal. *See Piper Aircraft*, 454 U.S. at 260 n. 29, 102 S.Ct. 252.

In sum, both the public and private factors weigh in favor of trial in the plaintiff's chosen forum. Defendants have failed to establish that trial in an alternate forum is desirable and "clearly more appropriate." *Firma Melodiya v. ZYX Music GmbH*, 882 F.Supp. at 1317.

## II. Personal Jurisdiction

Additionally, defendants have argued that the court lacks personal jurisdiction over Jesper Iversen. Under New York law, the court must determine whether the New York Civil Practice Law & Rules ("C.P.L.R.") provides a basis for jurisdiction, and whether the exercise of personal jurisdiction would offend due process considerations pursuant to *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Section 302(a)(1) of the C.P.L.R. provides that the court can exercise general jurisdiction over a non-domiciliary if the defendant "transacts business" in New York State, and the claims against the defendant arise out of that business activity. The defendant transacts business in the state if he purposely avails himself of the privilege of conducting business activities within New York, thus invoking the benefits and protections of its laws. *Cut-Co Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986).

Here, Mr. Iversen is a citizen and resident of Denmark and has neither a residence nor business office in New York, and Scanwill is incorporated under the laws of Denmark. However, it is undisputed that defendants transacted business in New York State. Mr. Iversen traveled to New York to conduct business with Sherex, communicated by telephone and telefax with Sherex, prepared advertising and marketing information for Sherex, entered into an agreement to distribute defendants' products through Sherex in New

York and the United States, and sold its products for distribution through Sherex in New York and the United States. Item 16, Sherex Decl., ¶¶ 3–5. Defendants argue that there was no written distribution agreement between defendants and Sherex, and that the business conducted by defendants amounted to a single sale in the approximate amount of $10,000. Nonetheless, defendants purposefully availed themselves of the privilege of conducting business activities in New York State, invoking the benefits of its laws and rendering themselves amenable to long-arm jurisdiction.

■ Turning to due process considerations, the constitutional standard requires that 1) the cause of action arise from minimum contacts with the forum state; 2) the defendant have minimum contacts with the forum state; and 3) the exercise of personal jurisdiction is reasonable. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). "Due process is not offended when a defendant 'purposefully avails [him]self of the privilege of conducting activities in the forum state, [because he] can reasonably anticipate being subject to suit there.'" *Modern Computer Corp. v. Ma,* 862 F.Supp. 938, 945 (E.D.N.Y.1994) (quoting *Melendez v. Professional Mach. & Tool Co., Ltd.,* 190 A.D.2d 657, 593 N.Y.S.2d 258 (2d Dep't 1993)); *see also World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 297, 100 S.Ct. 559.

Here, defendants chose to do business with Sherex in New York State, exchanging marketing information and shipping goods. Although defendant Jesper Iversen will be inconvenienced by the litigation in the United States, there is a strong interest in adjudicating this dispute in the New York courts. Equally compelling is plaintiff's interest in obtaining relief according to United States law. Accordingly, the exercise of personal jurisdiction over Jesper Iversen comports with "traditional notions of fair play and substantial justice." *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154.

## CONCLUSION

The defendants' motion to dismiss the action on the grounds of *forum non conveniens* is denied, and the motion to dismiss as against Mr. Iversen for lack of personal jurisdiction is also denied. Finally, the defendants' request for a stay pending the resolution of the Danish litigation is denied. The court will conduct a telephone conference with counsel on Friday, May 7, 2004, at 2 p.m. to set a further schedule.

So ordered.